1   ISMAIL J. RAMSEY (CABN 189820)
    United States Attorney
2
    KATHERINE L. WAWRZYNIAK (CABN 252751)
3   Chief, Criminal Division

4   CHRISTOFFER LEE (CABN 280360)
    EMILY R. DAHLKE (CABN 322196)
5   Assistant United States Attorneys

6        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
7        Telephone: (415) 436-7200
         Fax: (415) 436-7234
8        christoffer.lee@usdoj.gov
         emily.dahlke@usdoj.gov
9
    Attorneys for United States of America
10

11                   UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14   UNITED STATES OF AMERICA,              )   **CASE NO. 3:23-mj-70759 MAG**
                                            )
15          Plaintiff,                      )   **MEMORANDUM IN SUPPORT OF UNITED**
                                            )   **STATES' MOTION FOR DETENTION**
16      v.                                  )
                                            )
17   MAURICIO HERNANDEZ,                    )
                                            )   Date:  June 6, 2023
18          Defendant.                      )   Time:  10:30 a.m.
                                            )   Court: Hon. Sallie Kim
19   _____)

20

21

22

23

24

25

26

27

28

UNITED STATES' DETENTION MEMO          1
3:23-mj-70759 MAG

I.      INTRODUCTION

Within an approximate one-block radius of Seventh Street between Mission and Market Streets in San Francisco sit a federal office building at 90 Seventh Street, a federal courthouse, a preschool, a methadone clinic, and a health resource center serving the community.  This area has suffered from an increase in criminal activity including drug trafficking, drug use, assaults, robberies, stabbings, and shootings.  Defendant Mauricio Hernandez is an armed fentanyl dealer who works this block.

In August 2022, a suspect later identified as Defendant fired a pistol at the head of an unknown victim near Seventh Street and Stevenson Alley; the victim narrowly dodged a bullet.  Defendant was not arrested on that date as he fled before police arrived.  Two months later Defendant returned to the area with 100 grams of fentanyl in six baggies, along with a loaded 9mm Ruger pistol.  When San Francisco Police officers arrested Defendant in October 2022, he was in violation of a stay-away order that prohibited his presence near Seventh and Market Streets (imposed because of a 2018 drug sales arrest in that same location).  He also had an outstanding felony no-bail warrant.  Defendant was previously charged in 2018 in state court with offenses related to the sale and transportation of controlled substances but those charges were dismissed when Defendant completed diversion. Notwithstanding Defendant's completion of diversion, Defendant continued to possess fentanyl for distribution near Seventh and Mission Streets, as confirmed by officers in October 2022 during his arrest.  After Defendant had a preliminary hearing in state court on charges related to the October 2022 arrest, Defendant skipped his court date and has been on the run.  Yet again, he returned to sell fentanyl on the Seventh and Mission Street corridor.  When officers located Defendant on May 25, 2023, he was again near Seventh and Mission Streets (a place he has been ordered to stay-away), this time holding a small scale for measuring drugs, and what appeared to be 58.7 grams of fentanyl, 2.2 grams of methamphetamine, and 0.5 grams of cocaine base (all weights gross, drug testing pending).

Defendant is both a danger to the community and a significant flight risk.  Defendant is not amenable to court supervision.  He cannot overcome the presumption that there is no condition or combination of conditions that can secure his appearance before the Court or provide for the safety of the community.  Accordingly, the government requests that he be detained pending trial.

II.     **FACTUAL BACKGROUND**

As alleged in the criminal complaint, on August 14, 2022, an individual later identified as Defendant was captured by the surveillance cameras of the federal building shooting a pistol inches away from the head of an unknown victim.  Police responded but could not locate the suspect.



On October 24, 2022, a security guard at the federal building recognized Defendant as the individual who shot at the head of the unknown victim in August, in part because of a distinctive pair of sandals Defendant possessed on both occasions.  Police officers responded but were unable to locate Defendant.  Defendant returned on October 25, 2022, and the security guard again recognized Defendant and called police.  Officers responded and apprehended Defendant.

Officers searched Defendant and found six separate plastic bags in his jacket pocket containing approximately 104.5 grams gross weight of fentanyl (which a drug test confirmed was presumptive positive fentanyl).  In Defendant's backpack, officers found a pair of brass knuckles and a loaded 9mm Ruger Security 9 semi-automatic pistol.  Officers also found in Defendant's car the same distinctive pair of sandals that linked him to the earlier shooting.

 

At the time of Defendant's arrest near Seventh and Mission Streets, Defendant was in violation of a state stay-away order for a previous arrest for violating Health and Safety Code § 11352 (which prohibits the transportation of fentanyl for sales, amongst other substances), which required that he stay

150 yards away from Seventh and Market Streets.[1]  At this time, Defendant also had an active, no-bail warrant for Penal Code § 32 (accessory after the fact).

As a result of Defendant's arrest on October 25, 2022, Defendant was charged with unlawful firearms possession and possession of controlled substances for sale in San Francisco Superior Court. He was also charged with the discharge of the firearm from the August 2022 shooting.  Thus, Defendant had multiple pending charges due to his actions on both August 14, 2022 and October 25, 2022.  On November 14, 2022, Defendant had a preliminary hearing where the court found there was probable cause to support the charges related to the October 25, 2022 possession of a loaded firearm and possession of fentanyl for sales, amongst other charges.[2]  Defendant then absconded.  On December 7, 2022, San Francisco Sheriff's Department issued two felony bench warrants for Defendant's arrest.

On May 25, 2023, the security guard who previously recognized Defendant as the shooter, once again saw Defendant in the vicinity of the federal building located at 90 Seventh Street in San Francisco. A records check confirmed two active felony bench warrants for Defendant.  While the security guard watched Defendant from the live security footage, he directed Federal Protective Services (FPS) officers to the corner of Seventh and Minna Streets, approximately one half block from the federal building. Defendant was taken into custody without incident and taken to the FPS holding cell for processing on the state warrants.  Prior to transport, officers inventoried Defendant's possessions.  Officers found on Defendant's person and seized a small scale, and what appeared to be 58.7 grams of suspected fentanyl, 2.2 grams of methamphetamine, and 0.5 grams of cocaine base (all weights gross, drug testing pending).

On May 25, 2023, the United States District Court for the Northern District of California issued a criminal complaint charging HERNANDEZ with Possession with Intent to Distribute a Mixture or

---

[1] Defendant was charged in 2018 with violations of Health and Safety Code §§ 11351, 11351.5, 11352(A), which relate to the sales and transportation of controlled substances.  It appears that the San Francisco Superior Court dismissed these charges after Defendant successfully completed diversion.

[2] The court did not hold Defendant to answer on charges related to the August 2022 discharge of the firearm noting that a crucial witness was unavailable to testify at the preliminary hearing and there was no video footage presented, but noted "The Court considered the secondhand testimony from [the testifying officer regarding the security guard's] identification of Mr. Hernandez on October 24th and October 25th to be quite credible.  And the Court has a strong suspicion that Mr. Hernandez is in fact the person who was seen by [the security guard] on the August 14th video, discharging the firearm twice.  In particular, the testimony about the appearance of Mr. Hernandez, about the distinctive red-orange sandals which were seen both in the August 14th video, as well as the later October video all supports the People's charges."  Preliminary Hearing Transcript at 77.

1   Substance Containing a Detectable Amount of Fentanyl on October 25, 2022, and issued a warrant for

2   his arrest (Case No. 23-mj-70759 MAG, issued by the Hon. Laurel Beeler, United States Magistrate

3   Judge).  On June 5, 2023, state charges pending against Defendant for the October 25, 2022 conduct

4   were dismissed given this federal prosecution.[3]

5   **III.    LEGAL STANDARD**

6        Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail

7   where "no condition or combination of conditions will reasonably assure the appearance of the person as

8   required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is

9   appropriate where a defendant is either a danger to the community or a flight risk; the government need

10   not prove that both factors are present.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

11   A finding that a defendant is a danger to the community must be supported by clear and convincing

12   evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the

13   evidence.  *Id.*

14        "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated

15   in [18 U.S.C.] § 3142(g)."  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).

16   Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence

17   against the defendant; (iii) the history and characteristics of the defendant, including the defendant's

18   character, physical and mental condition, family and community ties, past conduct, history relating to

19   drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well

20   as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature

21   and seriousness of the danger to any person or to the community that would be posed by the defendant's

22   release.  *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

23        Where there is probable cause that a defendant has violated an offense for which a maximum of

24   ten years in prison or more is prescribed in the Controlled Substances Act, courts apply a rebuttable

25   presumption that no condition or combination of conditions will reasonably assure the defendant's

26   appearance as required and the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(A).  Under this

27

28       [3] The District Attorney's Office also dismissed charges related to a pending violation of Penal
Code § 32.

1   scheme, the burden of production shifts to the defendant.  *United States v. Hir*, 517 F.3d 1081, 1086 (9th

2   Cir. 2008).  Even if the defendant rebuts the presumption, the presumption is not erased; instead, it

3   remains in the case as an evidentiary finding militating against release that is to be weighted along with

4   other relevant factors.  *See id.* (citation omitted).

5   **IV.    ARGUMENT**

6            1.  The defendant faces a rebuttable presumption in favor of detention.

7            When Defendant was arrested in October 2022, as charged in the complaint, he was in actual

8   physical possession of distribution amounts of fentanyl—over 100 grams.   Therefore, there is probable

9   cause to believe Defendant committed an offense for which a maximum term of imprisonment of ten

10  years or more is prescribed in the Controlled Substances Act.  As a result, there is a rebuttable

11  presumption that no condition or combination of conditions will reasonably assure the appearance of the

12  person as required and the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(A).  As described

13  below, Defendant will be unable to overcome this presumption.

14           2.  The defendant cannot overcome the presumption that he is a flight risk.

15           Defendant is a Honduran national.  Defendant has a frequent pattern of absconding from court

16  dates and violating court orders.  He violated a stay-away order from San Francisco Superior Court by

17  returning to Seventh and Mission Streets to deal drugs at the time of his October 2022 arrest.  At that

18  time, he also had a no-bail warrant for violating Penal Code § 32—accessory after the fact—a charge

19  frequently filed in state court in lieu of charges related to drug trafficking.  In November 2022, after a

20  San Francisco Superior Court judge found there was probable cause to believe Defendant committed

21  offenses related to the October 2022 conduct, Defendant fled, skipping his subsequent court dates.  In

22  the intervening six months, Defendant did not turn himself in.  Defendant did not resurface until law

23  enforcement recognized him as having two felony warrants arising from his pending state court charges

24  and arrested him.  Defendant's pattern of conduct demonstrates that he cares little for court orders and is

25  not amenable to court supervision.

26           Lastly, Defendant faces a severe penalty if convicted.  As currently charged, Defendant faces a

27  maximum of 20 years in prison.  The quantity of fentanyl he possessed and his concurrent possession of

28  a firearm likewise creates additional, significant sentencing exposure.  That severe penalty—more

UNITED STATES' DETENTION MEMO                    6
3:23-mj-70759 MAG

severe than any penalty he has faced to date given his diversion on his prior drug sales cases—creates a strong incentive for Defendant to flee immediately if released.  *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely that he will flee").

        3.  <u>The defendant cannot overcome the presumption that he is a danger to the community.</u>

On October 25, 2022, Defendant possessed approximately 100 grams of fentanyl for sale while carrying a loaded 9mm Ruger pistol in his backpack.  This was a mere two months after a suspect matching his description fired a pistol at the head of an unknown victim at the same location.  Defendant has been arrested multiple times for drug sales and his diversionary sentence granted by state court did not deter him from subsequent drug sales and related firearms possession.  And he also possessed over 50 grams of suspected fentanyl, a scale, and other suspected controlled substances when he was arrested a few weeks ago on his bench warrants issued when he failed to appear on his state charges arising from the very same incident for which he is now charged federally.  If Defendant is released and able to continue distributing any controlled substances—but particularly fentanyl—he will continue to pose a severe danger to the community and all those who come to the Tenderloin searching for fentanyl or who even inadvertently come into contact with the substance.  *See, e.g.*, *United States v. Alfonso Ramos*, No. 3:20-mj-71799-MAG-1 (EJD), 2020 U.S. Dist. LEXIS 244831, at *7 (N.D. Cal. Dec. 29, 2020) (sale of approximately 227 grams of fentanyl showed defendant posed a danger to the community because "[f]entanyl is among the most dangerous and deadly illegal drugs").

**V.    CONCLUSION**

Defendant cannot overcome the presumption that there are no conditions that will reasonably assure his appearance at court proceedings or ensure the safety of the community.  Defendant is not amenable to supervision.  The Court should order Defendant detained pending trial.

DATED:  June 6, 2023                           Respectfully submitted,

                                       ISMAIL J. RAMSEY
                                       United States Attorney

                                          /s/
                                       EMILY R. DAHLKE
                                       CHRISTOFFER LEE
                                       Assistant United States Attorneys